IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DANIEL WALKER, individually, and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) Case No. 7:23-cv-00568 |
| v. | ) ) **MEMORANDUM OPINION** ) |
| BROOKS PUBLIC SAFETY LLC, and BROOKS NETWORK SERVICES, LLC, | ) By:   Hon. Thomas T. Cullen ) United States District Judge ) ) |
| Defendants. | ) |

Plaintiff Daniel Walker worked for Brooks Public Safety LLC ("BPS") and Brooks Network Services, LLC ("BNS") out of their Rocky Mount, Virginia location from December 2022 until June 2023. Over that seven-month period, he contends that he was never paid overtime despite working, on average, 50 hours per week. According to Walker, his experience was not unique among fellow employees; in the past two-and-a-half years, BPS and BNS (together, "Defendants") allegedly failed to pay overtime wages to other installers at their locations in Virginia and North Carolina. Walker filed suit on behalf of himself and others, alleging that Defendants' failure to pay overtime compensation to their installers violated the Fair Labor Standards Act and the Virginia Overtime Wage Act.

The matter is before the court on Defendants' motion to dismiss. (Mot. Dismiss [ECF No. 13].) Defendants assert that (1) the court lacks personal jurisdiction over BNS; (2) Walker's complaint fails to state a claim under the VOWA; and (3) this court is the wrong

venue for Walker's claims. The motion was fully briefed and is ripe for decision.[1] For the reasons discussed below, the court will deny Defendants' motion to dismiss in its entirety.

## I. BACKGROUND

The facts are taken from Plaintiff's complaint and, at this stage, are presumed to be true.[2] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

BNS is a North Carolina-based "IT solutions provider and network integrator[.]" (Compl. ¶ 10 [ECF No. 1].) Specifically, it provides upfitting services, including the installation of "video, computer, surveillance, light, sound, connectivity, and mounting solutions for police, sheriffs, EMS, and security vehicles." (*Id.* ¶ 11.) BNS evidently branched out of North Carolina and began providing similar upfitting services in Virginia in the spring of 2022. (*Id.* ¶ 13.) Then in October 2022, BPS was formed as a Virginia LLC with its principal place of business in Rocky Mount, Virginia. (*Id.* ¶¶ 8, 13.) Since then, Walker alleges that all upfitting services, whether out of the two locations in North Carolina or the one in Virginia, are performed under the name "Brooks Public Safety." (*Id.* ¶¶ 13–14.) Walker also claims that Defendants operate "as an integrated or joint employer, sharing common ownership and management over all three locations that perform upfitting services under the name 'Brooks

---

[1] The court dispenses with oral arguments because the parties' positions are adequately set forth in their written submissions and further argument is not necessary to decide the discrete issues before it.

[2] Before reciting the facts, the court attempts to clarify an apparent point of confusion between the parties in how the Complaint refers to the defendants. (*See, e.g.*, Mem. Opp'n Mot. Dismiss at 5 [ECF No. 15].) The North Carolina limited liability company ("LLC") is "Brooks Network Services, LLC." The Virginia LLC is "Brooks Public Safety LLC." When naming one of the entities individually, Walker writes its full name, including the suffix "LLC." But when referring to the entities together as the upfitting-service provider, Walker uses "Brooks Public Safety" *or* "Defendants." (Compl. at 1 ("Defendants Brooks Public Safety LLC and Brooks Network Services, LLC (collectively "Brooks Public Safety" or "Defendants")).)

Public Safety.'" (*Id.* ¶ 15.) The eponymous LLCs share the same sole member, Stephen Brooks. (*See* Notice, Oct. 27, 2023 [ECF No. 12].)

Walker worked as an installer at Defendants' Rocky Mount, Virginia location from December 1, 2022, until June 13, 2023. (Compl. ¶¶ 7, 20–21.) Walker and other installers were salaried employees who "performed 'upfittings', *i.e.*, after-market installations of law enforcement and public safety related features into vehicles already purchased elsewhere." (*Id.* ¶¶ 25, 39.) Installers performed their duties "as directed and exercised no discretion or judgment" as to what equipment they were installing. (*Id.* ¶ 40.) Walker states that he was never paid overtime compensation, despite regularly working 50–60 hours per week. (*Id.* ¶¶ 28–29.) According to Walker, other installers were also not paid overtime. For the two-and-a-half years preceding this lawsuit, Defendants purportedly "had a policy and practice of not paying overtime compensation to Installers when they work[ed] over forty (40) hours in a week." (*Id.* ¶ 31.) Walker's paystubs reflected that BNS was his employer and paid his salary. (*Id.* ¶ 15; *see* Mem. Opp'n Mot. Dismiss Ex. 1 [ECF No. 15-1].)

Walker now brings two claims individually and as a collective action on behalf of others similarly situated to recover all available damages for Defendants' alleged failure to pay overtime under (1) section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and (2) the Virginia Overtime Wage Act ("VOWA"), Va. Code Ann. § 40.1-29(J), 29.2. Defendants filed a partial motion to dismiss, asserting that (1) BNS must be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) because it is a North Carolina LLC; (2) Count II must be dismissed in its entirety under Rule 12(b)(6) because Walker fails to state a claim for treble damages available under a previous version of VOWA;

and (3) the matter must be dismissed for improper venue under Rule 12(b)(3). Alternatively, Defendants request to transfer the matter to the Middle District of North Carolina because BNS is headquartered in that district and more members of the putative collective are from North Carolina.

## II. STANDARDS OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(2)

A 12(b)(2) motion to dismiss challenges the court's personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). When faced with such a challenge, the plaintiff has the burden of proving jurisdiction by a preponderance of the evidence. *Mylan Lab'ys, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993). Where, as here, "the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). The court "construe[s] all relevant pleading allegations in the light most favorable to the plaintiff, assume[s] credibility, and draw[s] the most favorable inferences for the existence of jurisdiction." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

### B. Federal Rule of Civil Procedure 12(b)(3)

A Rule 12(b)(3) motion allows a party to challenge a plaintiff's choice of venue. Fed. R. Civ. P. 12(b)(3). To defeat such a motion, the plaintiff must "make only a prima facie showing of proper venue." *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 366 (4th Cir. 2012). "In assessing whether there has been a prima facie venue showing," the court construes

"the facts in the light most favorable to the plaintiff." *Id.* Indeed, "all inferences must be drawn in favor of the plaintiff, and the facts must be viewed as the plaintiff most strongly can plead them." *Jones v. Koons Automotive, Inc.*, 752 F. Supp. 2d 670, 680 (D. Md. 2010) (cleaned up). In its assessment, the court may look to evidence outside the complaint. *Aggarao*, 675 F.3d at 365–66.

**C.     Federal Rule of Civil Procedure 12(b)(6)**

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

### III.     ANALYSIS

**A.     Personal Jurisdiction**

Defendants assert that the court cannot exercise personal jurisdiction over BNS because it is a North Carolina entity with its principal place of business in Alamance County, North Carolina, and any ties it may have to Virginia are unrelated to this lawsuit. Walker argues

that specific personal jurisdiction is proper over BNS because BNS's ties to Virginia led directly to their claims. The court agrees with Walker.

In establishing a basis for specific personal jurisdiction,[3] a plaintiff must "demonstrat[e] that the defendant purposely established minimum contacts in the forum state such that it should reasonably anticipate being haled into court there on a claim arising out of those contacts." *Sneha Media & Ent., LLC v. Associated Broad. Co. P. Ltd.*, 911 F.3d 192, 198 (4th Cir. 2018). Such jurisdiction is proper if it "is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). Because Virginia's long-arm statute extends personal jurisdiction to the outer reaches of due process, the statutory and constitutional inquiries merge.[4] *Id.*; *see also John G. Kolbe, Inc. v. Chromodern Chair Co., Inc.*, 211 Va. 736, 740 (1971). To carry his burden in making a prima facie case for specific personal jurisdiction, therefore, Walker must show that BNS has "sufficient 'minimum contacts'" with the Commonwealth of Virginia "such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Consulting Eng'rs Corp.*, 561 F.3d at 277 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

---

[3] Walker does not assert general jurisdiction as a basis for the court's personal jurisdiction over BNS, so the court only considers whether it has specific personal jurisdiction over BNS.

[4] Much of Defendants' brief in support of their motion to dismiss focuses on the statutory inquiry. While at least one district court has suggested that this step may still be necessary, *see Desantis v. Hafner Creations, Inc.*, 949 F. Supp. 419, 423 (E.D. Va. 1996), the Fourth Circuit maintains that "a Virginia court thus has jurisdiction over a nonresident defendant if the exercise of such jurisdiction is consonant with the strictures of due process." *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 301 (4th Cir. 2012).

To pass the Fourth Circuit's minimum-contacts test in favor of exercising personal jurisdiction, Walker must "demonstrate (1) that [BNS] purposefully availed itself of the privilege of conducting activities in Virginia; (2) that [Walker]'s claims arose out of the activities that [BNS] directed at Virginia; and (3) that the district court's exercise of personal jurisdiction over [BNS] would be constitutionally reasonable." *Sneha Media & Ent., LLC*, 911 F.3d at 198 (citing *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016)).

### 1. BNS purposefully availed itself of Virginia's laws

When an out-of-state defendant purposefully avails itself of the benefits of a certain forum's laws, the Constitution is not offended if it is brought back to that forum to answer for an alleged violation of those laws. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). In determining whether an out-of-state business has purposefully availed itself of a state's laws, the Fourth Circuit has identified a non-exhaustive list of factors for the court to consider, including

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*Sneha Media & Ent., LLC*, 911 F.3d at 198–99. The inquiry is flexible, and the court considers the factors on a case-by-case basis. *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 560

(4th Cir. 2014). A plaintiff need not establish each factor to make out a prima facie case of jurisdiction. *See Lagonia v. Ratliff*, 438 F. Supp. 3d 607, 613 (W.D.N.C. 2020).

Walker's strongest argument for purposeful availment is that BNS reached into Virginia to direct, supervise, and pay its installers like Walker and other putative members of the collective action. (*See* Compl. ¶ 7; Mem. Opp'n Mot. Dismiss Ex. 1 (reflecting that Walker's paystubs were from BNS).) Moreover, BNS is registered to do business in Virginia and has a registered agent in the Commonwealth. (*See* Br. Supp. Mot. Dismiss Ex. A [ECF No. 14-1].) BNS entered the Virginia market in the spring of 2022 to provide upfitting services to Virginia clients and has remained there with BPS "as an integrated or joint employer, [which] shar[es] common ownership and management over . . . the Virginia location." (Mem. Opp'n Mot. Dismiss at 6.) BNS counters that it was not physically present in Virginia during Walker's employment, and it had "ceased engaging in commercial activity in Virginia" when BPS was created. (Br. Supp. Mot. Dismiss at 8.)

Taking Walker's allegations as true and drawing inferences in his favor, the court finds that BNS purposely availed itself of Virginia's laws to do business in the Commonwealth. BNS came to Virginia in 2022 to provide upfitting services directly and has continued to do so indirectly by employing and paying Virginia installers like Walker to provide those services. Indeed, Walker's paystubs make no mention of BPS; BNS, along with its North Carolina address, is the only listed entity. *(See* Mem. Opp'n Mot. Dismiss Ex. 1.) On these facts, Walker carries his burden of showing purposeful availment by BNS. *See, e.g.*, *Beckley v. Priority Auto Group., Inc.*, No. 3:21-cv-00072, 2022 WL 899453, at *4 (W.D.N.C. Mar. 28, 2022) (finding

personal jurisdiction in North Carolina over a Virginia entity that provided payroll services to and recruited an employee for its associated entity located in North Carolina).

2. **Walker's claims arise out of activities directed at the state**

Next, Walker asserts that the second prong of the minimum contacts test is satisfied because his claims for inadequate wages are a direct result of BNS's employment of individuals like Walker in Virginia. The court agrees. The alleged misconduct at the root of Walker's claims is BNS's failure to pay overtime compensation. As Walker's paystubs make clear, BNS provided the payroll for Walker and allegedly other installers in Virginia, so any failure to pay overtime stems directly from BNS's connection to the Commonwealth. *See Beckley*, 2022 WL 899453, at *4 ("Plaintiff's [wage] claims arise out of these specific activities in which Defendants purposefully availed themselves in North Carolina.").

3. **Exercising jurisdiction over BNS is constitutionally reasonable**

In evaluating the third prong of the minimum contacts test—whether the exercise of personal jurisdiction over BNS is constitutionally reasonable—the court typically considers certain factors, including "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Consulting Eng'rs Corp.*, 561 F.3d at 279. On the record before the court, these factors support exercising personal jurisdiction over BNS. The burden for BNS to litigate in a neighboring state is light, Virginia has a strong interest in ensuring its citizens are paid properly for their labor, and Walker and other putative plaintiffs in Virginia have a substantial interest

in obtaining relief. *See Thousand Oaks Barrel Co., LLC v. Deep South Barrels LLC*, 241 F. Supp. 3d 708, 717 (E.D. Va. 2017). Moreover, the final two factors do not counsel that exercising personal jurisdiction here is constitutionally unreasonable.

In sum, Walker has carried his burden of showing that an exercise of specific personal jurisdiction over BNS complies with due process. BNS's motion to dismiss will be denied on this ground.

**B.     Failure to State a Claim**

Defendants also move to dismiss Count II of the collective action under Federal Rule of Civil Procedure 12(b)(6), asserting that Walker "fails to state a claim . . . for any damages available under Va. Code [Ann.] § 40.1-29.2 between July 2, 2021 and June 30, 2022." (Mot. Dismiss at 2.) It appears Defendants seek to dismiss the entire claim because treble damages that may be available to putative collective members under the former version of VOWA are not available to Walker individually.

"[T]he nature of the relief sought is immaterial to the question of whether a complaint adequately states a claim upon which relief can be granted." *Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.*, 21 F. Supp. 3d 620, 631 (W.D. Va. 2014) (citations omitted). Defendants here attempt to dismiss the entire VOWA claim by arguing that certain damages available to the plaintiffs may be limited *if they ultimately prevail*. The court cannot dismiss the entire claim on this ground, so Defendants' motion to dismiss Count II must be denied.[5]

---

[5] And insofar as Defendants seek to strike a claimed element of damages (as opposed to the claim in its entirety), its efforts fail: "[a] plain reading of Rule 12(b)(6) indicates that the rule may be used only to dismiss a 'claim' in its entirety." *Janis v. Nelson*, No. CR. 09-5019-KES, 2009 WL 4505935, at *7 (D.S.D. Nov. 24, 2009); *see also Howard v. Impossible Foods, Inc.*, No. 4:23-cv-00016, 2023 WL 7548963, at *4 (W.D. Va. Nov. 14, 2023); *Meeks v. Emiabata*, No. 7:14-cv-00534, 2015 WL 1636800, at *2 (W.D. Va. Apr. 13, 2015) (noting that Rule 12(b)(6) "does not provide a vehicle to dismiss a portion of relief sought or a specific remedy").

Defendants also briefly assert that Count II must be dismissed because it was not brought within the VOWA's statute of limitations. (*See* Br. Supp. Mot. Dismiss at 9.) But as Walker correctly states, his claims are timely under either a two- or three-year statute of limitations because he asserts that the Virginia "Installers' line of work started in April or May 2022," and he brought this action in September 2023. (Mem. Opp'n Mot. Dismiss at 10.) Walker filed suit well within even a two-year statute of limitations, so the court cannot dismiss Count II based on VOWA's statute of limitations.

**C.  Venue**

Defendants also move to dismiss the matter for improper venue, or to transfer venue to the Middle District of North Carolina.

### 1.  Motion to Dismiss for Improper Venue

When faced with a 12(b)(3) challenge to venue, "the court must determine whether the case falls within one of the three categories set out in [28 U.S.C.] § 1391(b). If it does, venue is proper" and the case "may not be dismissed under . . . Rule 12(b)(3)." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. W.D. Tex.*, 571 U.S. 49, 56 (2013). Among those categories, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." § 1391(b)(2). A "substantial part" does not necessarily mean that a majority of the events must have taken place in the given district, and the chosen venue need not be the "best venue." *Seidel v. Kerby*, 296 F. Supp. 3d 745, 752 (D. Md. 2017).

Walker alleges venue is proper in this court because a substantial part of the events giving rise to this lawsuit occurred at his place of employment in Rocky Mount, Virginia, which is within this judicial district. (*See* Compl. ¶ 5.) Defendants do not appear to contest that venue

is properly laid under § 1391(b), but instead argue that the Western District of Virginia is not, from their perspective, the ideal venue. (*See* Br. Supp. Mot. Dismiss at 9–10.) Again, a chosen venue need not be the best venue so long as it falls within one of the § 1391(b) categories to survive a 12(b)(3) motion. *See Atl. Marine Constr. Co., Inc.*, 571 U.S. at 56. The court agrees with Walker's venue assessment because he allegedly worked overtime and received deficient paychecks in this district. Finding Walker has carried his burden in showing venue is proper under § 1391(b), the court will deny Defendants' motion to dismiss on this ground.

### 2. Motion to Transfer Venue

Alternatively, Defendants move to transfer venue to the Middle District of North Carolina. Though venue is proper in this district, the court may in its discretion transfer the matter to another suitable venue for "the convenience of parties and witnesses" if doing so is "in the interest of justice[.]" 28 U.S.C. § 1404(a). This discretionary inquiry "turns on two questions: (1) whether venue is proper in the proposed transferee district, and (2) whether considerations of justice and convenience justify the transfer." *Dickson Props., LLC v. Wells Fargo Bank, N.A.*, No. 7:16-cv-527, 2017 WL 3273380, at *2 (W.D. Va. Aug. 1, 2017). Walker does not dispute that venue would be proper in the Middle District of North Carolina, so the court moves to the second part of the discretionary venue analysis.

In considering whether justice and convenience counsel a transfer, the court looks to four guiding factors: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). As the party requesting transfer, Defendants "bear[] the burden of demonstrating that

the balance of interests weighs in favor of transfer." *Nelson v. Tidal Basin Holding, Inc.*, No. 5:19-cv-00030, 2019 WL 6107862, at \*1 (W.D. Va. Nov. 15, 2019). After careful consideration of the factors, the court finds that Defendants have not carried their burden and, on balance, the factors weigh against a transfer—at least at this stage.[6]

While Walker's choice of venue is not conclusive, his choice "is entitled to substantial weight in determining whether transfer is appropriate." *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund*, 791 F.3d at 444 (quoting *Bd. of Trs. v. Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473, 477 (E.D. Va. 2007)). Moreover, the court varies the weight given to a plaintiff's choice of venue "depending on the significance of the contacts between the Plaintiff's chosen venue and the cause of action." *Sullivant Ave. Props., LLC*, 508 F. Supp. 2d at 477. The contacts here are quite strong; Walker asserts that he did not receive overtime compensation for labor done within this district. This factor, therefore, weighs heavily towards retaining the case in Walker's chosen venue. Defendants' burden to show transfer is warranted grows heavier. *See Trs. of the Plumbers & Pipefitters Nat'l Pension Fund*, 791 F.3d at 444 ("Given the substantial weight accorded to this first factor, Defendants need to make a compelling showing on the remaining factors to persuade us that the district court abused its discretion by refusing to transfer venue.").

---

[6] Assuming that an FLSA collective is conditionally certified, and that many more North-Carolina based employees opt-in to the collective action than Virginia-based employees, then Defendants would have a better argument that the Middle District of North Carolina is the appropriate venue. In the alternative, the court would entertain a motion by either party after the opt-in process has been completed to transfer venue within this district from the Roanoke Division to the Danville Division, given the latter's closer proximity to North Carolina. But it is premature to do either at this early stage. The court will thus deny the motion to transfer venue without prejudice, preserving the right of the Defendants to seek a different venue later in the proceeding.

Defendants assert that the second and third factors—the convenience of potential witnesses and parties—weigh in their favor because, logically, more putative members of the proposed FLSA collective are in North Carolina, given that Defendants have two locations there and just one in Virginia. (Br. Supp. Mot. Dismiss at 10.) Moreover, because BNS is headquartered in North Carolina, Defendants would be inconvenienced in discovery as "[a]ny records and witnesses maintained by [BNS] would necessarily be in North Carolina." (*Id.*) Walker counters that any inconvenience caused by hearing the case in the Western District of Virginia is negligible because the distance between BNS's headquarters in North Carolina and the events giving rise to this suit is only 77 miles. (Mem. Opp'n Mot. Dismiss at 11–12.)

Convenience for witnesses is often cited as among the most important considerations in reviewing a motion to transfer venue. *See Nelson*, 2019 WL 6107862, at \*3. Though neither party at this early stage provides the identities or locations of non-party witnesses, the court can reasonably infer that many are at or near Defendants' locations in North Carolina and Virginia. *See Dietrick*, 2019 WL 1745994, at \*3. As Defendants point out, the two locations in North Carolina logically suggest more witnesses will come from North Carolina than from Defendants' one Virginia location, so more North Carolina witnesses will be inconvenienced if the case is heard in the Western District of Virginia. Still, the court agrees with Walker that the inconvenience to potential witnesses is slight because the relatively short distance between this district and the proposed transferee district is not a significant inconvenience. *Contra Nelson*, 2019 WL 1745994, at \*3 (noting that transporting the bulk of Defendant's witnesses from Virginia to Texas "would impose significant inconvenience"). Additionally, the fact that BPS is a Virginia LLC and likely has witnesses based in Virginia that would be inconvenienced

were the case transferred to the Middle District of North Carolina further mitigates the overall inconvenience to witnesses of keeping the case in this district. Nevertheless, factor two leans slightly in Defendants' favor at this preliminary stage.

As to convenience of the parties, this factor is neutral. Whether the court transfers this case or not, one party will be inconvenienced, albeit slightly. BNS asserts that its relevant records are located at its headquarters in North Carolina and extensive discovery of such records will inconvenience it. (*See* Br. Supp. Mot. Dismiss at 10.) But that's not enough to tip this factor in favor of an out-of-state defendant. *See Salinas v. O'Reilly Auto., Inc.*, 358 F. Supp. 2d 569, 572 (N.D. Tex. 2005) (rejecting the notion that the transferee forum was more convenient merely because defendant was headquartered there and "[would] no doubt have many key witnesses and documents there"). As the *Salinas* court noted, "A case should not be transferred . . . simply to shift the burden of inconvenience from the defendant to the plaintiff." *Id.* Of course, Walker (and BPS) would be similarly inconvenienced if they were to be haled into court in North Carolina. Because at least one party would be slightly inconvenienced if this case is heard in either this or the transferee district, this factor does not weigh in favor of either party.

Finally, the "interest of justice" factor is neutral. When evaluating this broadly named factor, the court appropriately looks to all other "factors bearing on transfer that are unrelated to convenience of witnesses and parties." *Cross v. Fleet Rsrv. Ass'n Pension Plan*, 383 F. Supp. 2d 852, 857 (D. Md. 2005). Such "[f]actors include the local interest in having localized controversies decided at home . . . ." *Dietrick*, 2019 WL 1745994, at *4 (cleaned up). Indeed, that factor is the only one Defendants cite in support for their argument that transfer is in the

interest of justice. (Br. Supp. Mot. Dismiss at 10 ("Finally, fairness dictates that local controversies should be decided at home.")) The court does not doubt that North Carolina has an interest in this controversy, as potential opt-ins will be seeking to recover overtime wages from BNS, a North Carolina LLC. Yet this controversy is not local exclusively to North Carolina as Defendants suggest; Virginia also has an equally strong interest in ensuring that its citizens are paid fairly while working for a Virginia LLC. *See, e.g.*, Va. Code Ann. § 40.1-29.2 (providing a cause of action to vindicate this very right). Because both North Carolina and Virginia have an interest in deciding this controversy, the court finds the interest of justice factor neutral.

On balance, Defendants have not carried their burden in showing that transfer to the proposed district is proper. Accordingly, the court will deny Defendants' motion to transfer without prejudice.

### IV.   CONCLUSION

For these reasons, Defendants' motion to dismiss will be denied.

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 15th day of December, 2023.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE